CaRUTHERS, J.,
delivered the opinion of the Court.
This is an indictment, in the Circuit Court of Over-ten, for obtaining one quart of whiskey from Joseph Morton by “false and fraudulent pretences.” She is charged to have falsely “represented and pretended that she was sent by one James Brown to get the spirits *38 for him.” This is under the act of 1842, ch. 48, and was found 23d June, 1858. A conviction was had at the same term, and sentenced to three years confinement in the penitentiary. The jury recommended the defendant to the mercy of the Court, hut the Court declined to “ release the penalty imposed by the act,” as he was authorized to do on the recommendation of the jury, by the third section, where the goods obtained do not exceed the value of ten dollars.
We are now urged to grant the release. We doubt our power to do so, as it was probably intended to confine this discretionary power to the judge trying the case, who would have all the facts before him, and on that account be better able to form a correct opinion upon the merits of the case. He failed to notice the recommendation in any way, and thereby tacitly rejected it. We held, at Knoxville, that the power given to the Circuit Judge to commute the punishment in the penitentiary to confinement in the common jail, in cases of petit larceny, was given, alone, to the judge below, and could not be exercised by this Court. That is analogous to this case.
This small case brings up an important question upon one of the reasons in arrest, which is, to settle the time Avhen the Code went into effect. The question arises in this way: The Code changes the times of holding Overton Circuit Court from the third Mondays of February, June, and October, to the fourth Mondays of January, May, and September. So if the act constituting the Code was in force before the third Monday in June, it is insisted that there was no authority for the proceedings iind judgment'in this case, as the Court was sitting at *39 the wrong time, being different from that fixed by the latest act. This question might he avoided by disposing of the present case upon other grounds; but we prefer to meet it at once, as there seems to be some diversity of opinion on the question; and it is certainly very important, for many weighty reasons, that the question should be put to rest by judicial determination.
It would seem a little remarkable that this point had not been settled by positive enactment in the Code itself. But this can well be accounted for by the impatience and hurry which generally attend an adjournment, after a long and tedious session, of any legislative body. Although the great body of the Code consists of the statutes before enforced, with some changes of phraseology, yet there are many new and important provisions and changes which it would seem reasonable should not go into effect until after knotvledge of their nature on the part of the people, which could only be given by publication of the work. It would be proper, therefore, if it could be done upon any provision, or correct principle, to hold that it only takes effect from the time it was published. But can this be done?
The Code purports to embody all the general acts of the State in one act, divided into parts, titles, chapters, articles, and sections. The chapter on the limitation of actions, by section 47, is not to apply to any causes of action accruing before the 6th of October, 1858. An argument is made that this has the effect to postpone the whole Code to that day. But in this we are not able to concur. If such was the intention, why single out that chapter, when it would have been as easy and more natural to embrace the whole, expressly. *40 This would rather tend to show, that as the mind of the Legislature was upon the subject at the time when the Code should take effect, and they confined the; provision to one single subject, that it was not intended to extend any further.
It is a general rule that all statutes take effect from the time they are passed, unless some other time is prescribed in the act. But, for the purpose of avoiding the injustice and hardship, if not absurdity, of holding the people bound by laws before they had any opportunity of knowing what they were even by their publication in the newspapers, or the return of their members, a general law was passed in 1847, ch. 39, providing that “no general law” should “go into operation, or have a.ny binding effect, until after the expiration of forty days after its passage, unless otherwise provided in the act.”
This is -adopted in the Code, section 162, with the single alteration that the forty days are to be counted from lithe adjournment without day ” of the Legislature. The whole Code is but one general act of the Legislature, and the only provision in it in relation to the point under consideration, with the exception before stated, in relation to the limitation chapter, is in conformity to the act of 1847. Then is it possible to avoid ithe conclusion that it went into operation and effect at the expiration of forty days from the adjournment? We think not, and so decide. There is no question but that was long before the session of the Court at which these proceedings occurred, for that was late in June, 1858. The Legislature adjourned on the 22d day of March, *41 and the Code went into operation on the first day of May, 1858.
But still it does not follow that the judgments of the Court were unauthorized and illegal. The Code provides in section 41, that “in case of any conflict between the acts of this session and this Code, the latter shall he controlling.” The concluding paragraph of the act of last session, chapter 98, which fixes the terms of all the Courts precisely as does the Code — the one must have been copied from the other — excludes the change therein made from affecting the first terms to he held within “forty days” from the end of the session. Now this provision is not in conflict with the Code. • The latter has no provision on that subject, hut only adopts and continues the time fixed by the act as a permanent regulation. Both may stand without inconsistency. We will not say that there are not other grounds upon which the judgments of this Court might he maintained, independent of the one stated; hut that is sufficient for the purpose, and we need not go ■ in search of additional arguments. The judgments of Courts and the acts of officers, judicial or ministerial, will always he sustained, if it can be done upon any correct principle.
Another ground in arrest is, that the indictment does not charge a case of felony under the act of 1842.
The first section creates this new class of felonies in general terms. It consists in feloniously obtaining or getting into possession the personal goods or choses in action of another “ by means of any false or fraudulent pretence.” The third section defines the words used. Among other things, it provides that the phrase, “ shall include all cases where a person feloniously gets the *42 money or goods or choses in action of another into possession by any (1) false token, (2) or counterfeit letter, or (3) by falsely personating another, or (4) by falsely pretending to he the owner of such goods,” &c., “ or by any other false and fraudulent preZeitce, with the intention at the time of feloniously stealing them.” The four specified cases in the above extract are plain enough and of easy application; but under the general clause it is difficult to find any settled rule which pervades all the cases. The construction placed upon the English statutes on that subject, and those of the several States of the Union on their respective statutes, (for almost every State, with slight variations, has an act of the kind,) present such a conflicting variety of decisions that it is difficult to extract any settled principle from them. In 3 Arch. Crim. Prac., 468, there is a case cited from 2 East. P. 0., 672, very analogous to this, which was held not to fall under the statute. So at page 471 of the same book, in 48 Eng. Oom. Law Rep., 92, where a case very much like this was held not to constitute the felony. There are other cases cited by the same author and other books on the subject, that it would he difficult to distinguish from this, where similar acts were held to constitute the felony. We are not disposed to open the door so wide in the construction of this severe and penal act as to convert every case of falsehood and dishonesty by which one may get the advantage of another in the most insignificant matter into a felony. It surely Avas not intended that barely telling a lie, for the purpose of getting twenty-five cents worth of something to eat or drink, should constitute a felony punishable by, at least, three years confinement in the penitentiary. “ Ealse pretence ” *43 is to be taken in its legal, not literal sense. It is not every falsehood or pretence that will constitute the offence. But we will not now go into the distinctions. The defendant must be a very degraded creature, but she seems to have been a customer of the prosecutor. The lie was not calculated in itself, under the circumstances, to impose upon the prosecutor, and there is some reason to doubt whether it really did so.
The judgment will be arrested, upon this ground, and the defendant discharged.